IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LARSON and GREG BAYER, | : | |
| | : | |
| Appellants, | : | CIVIL ACTION NO. 15-1789 |
| | : | |
| v. | : | |
| | : | Bankruptcy No. 12-11083ELF |
| NICHOLAS BAYER, | : | Adv. No. 12-379 |
| | : | |
| Appellee. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                    September 29, 2016

     The appellants prosecuted an adversary proceeding seeking to have the bankruptcy court determine that their pre-petition claims against the Chapter 7 debtor appellee were excepted from discharge. After a trial, the bankruptcy court concluded that the appellants' claims were subject to discharge and entered judgment in favor of the appellee and against the appellants. The appellants failed to file a timely appeal from this decision; instead, on the penultimate day for filing such a motion, the appellants moved for an extension of time to file a notice of appeal from the bankruptcy court's decision. In the motion, the appellants claimed that the excusable neglect of their former local counsel warranted an extension of time because the attorney failed to file a notice of appeal after they had instructed him to do so. The appellants later supplemented their argument by claiming that the attorney also failed to advise them of the time for filing an appeal.

     After holding an evidentiary hearing, the bankruptcy court used the guidance set by the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) to analyze whether the appellants had proven excusable neglect. The bankruptcy court determined that although three of the four *Pioneer* factors favored the plaintiffs, the plaintiffs failed produce sufficient evidence to satisfy the third factor, *i.e.* the

reason for the delay.  The bankruptcy court also concluded that even if the appellants had proven that the court should not bind them to their counsel's action or inaction, they had failed to demonstrate that they acted diligently in pursuing a timely appeal.  As such, the bankruptcy court denied the motion for an extension.  The appellants then filed the instant appeal.

As discussed below, the appellants do not appear to contend that any of the bankruptcy court's factual findings were clearly erroneous or that the court failed to apply the applicable law to the motion.  Instead, the appellants argue that the bankruptcy court should have concluded that the third *Pioneer* factor weighed in their favor and that the equities in this case compelled the bankruptcy court to grant the motion and allow them additional time to file a notice of appeal.

After considering the applicable record and the parties' submissions, and after hearing oral argument from counsel, the court agrees with the bankruptcy court that the evidence presented by the appellants in support of their motion did not satisfy their burden to prove excusable neglect.  The appellants failed to prove that the failure to file a timely appeal was the result of inadvertence or neglect.  Even if they could show neglect, they failed to show that it was excusable.  In addition, they were not diligent in attempting to file a timely appeal.  The court recognizes that this decision results in the appellants' inability to contest their issues with respect to the discharge on appeal.  Nonetheless, the bankruptcy court properly concluded that the equities warranted denying the motion for an extension.  Accordingly, the court will affirm the decision of the bankruptcy court.

## I.     BACKGROUND AND PROCEDURAL HISTORY

In approximately 2003, the appellants, John Larson ("Larson") and Greg Bayer ("G. Bayer"), operating through a corporation named Proven Record, Inc. ("Proven Record"), started a chain of coffee shops doing business under the name, Saxby's Coffee.  December 5, 2014 Op.

("Dec. 2014 Op.") at 5 (citation omitted), *John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 72.[1]   In 2005, Proven Record transferred all of its assets to Saxby's Coffee, Inc. ("SCI"), a Georgia corporation and coffeehouse franchisor.  *Id.* (citation omitted).

The appellee, Nicholas Bayer, joined the appellants to work at SCI in August 2005.  *Id.* at 5-6 (citation omitted).  In mid- to late 2006, Larson resigned as the president and director of SCI and G. Bayer transitioned out of SCI.  *Id.* at 6.  In September 2006, the appellee became the president and sole director of SCI.  *Id.*  At that time, the appellee owned 24% of the shares of SCI, Larson owned 24% of the shares, and G. Bayer owned 20% of the shares.  *Id.*

Larson entered into a separation agreement with SCI in September 2016.  *Id.*  This agreement provided that, *inter alia*, (1) SCI would pay Larson to act as a consultant, (2) SCI had the option to purchase Larson's shares for a limited period of time and would then have a right of first refusal if Larson decided to dispose of the shares, and (3) the appellee received an irrevocable proxy to vote Larson's shares of SCI.  *Id.*

By late 2006, SCI had defaulted on the payment obligation portion of its agreement with Larson.  *Id.*  Then, between September 2006 and June 2007, several SCI shareholders were issued new shares of SCI.  *Id.* at 6-7.  SCI thereafter began negotiating with Joseph Grasso ("Grasso") and Kevin Meakim ("Meakim") to invest in SCI.  *Id.* at 7.  Initially, the appellee negotiated with Grasso and Meakim to infuse capital into SCI and purchase the appellants' shares.  *Id.*  Later, this potential equity investment and stock purchase transitioned into an asset purchase transaction.  *Id.*

---

[1] The opinion is a matter of public record and is part of the certified record insofar as it was attached as Exhibit B to the appellants' motion for extension of time to file a notice of appeal.  The court references this opinion purely for purposes of providing a brief background of the underlying litigation and some of the activity that preceded this case.

In this regard, on June 4, 2007, SCI notified its shareholders of a special shareholder meeting in the middle of the month to vote on the sale of SCI's assets to Grasso and Meakim. *Id.* at 7-8. Prior to the scheduled shareholder meeting, Larson informed the appellee that he was revoking his voting proxy due to alleged breaches of Larson's agreement with SCI. *Id.* at 8.

At the June 2007 shareholder meeting, G. Bayer asserted that he owned Larson's SCI shares. *Id.* Nonetheless, the appellee voted using Larson's proxy and voted to approve SCI's asset sale to Grasso and Meakim. *Id.* The shareholders approved the sale and in July 2007, SCI entered into an agreement to sell its assets to Saxby's Coffee Worldwide, LLC ("Saxby's Worldwide"), a new entity formed by Grasso and Meakim. *Id.* at 8-9. Once Saxby's Worldwide purchased SCI's assets, the appellee became the president and CEO of Saxby's Worldwide. *Id.* at 9.

In 2007, the appellants brought an action against, among others, the appellee and Grasso in the Chancery Division in the Circuit Court of Cook County, Illinois. *Id.* at 3 n.4, 9. In that state court action the appellants asserted multiple claims, including, *inter alia*, claims by (1) Larson against the appellee claiming that the appellee fraudulently induced him into entering into the separation agreement despite SCI and the appellee having no intention to perform their obligations under the agreement; (2) G. Bayer derivatively on behalf of SCI against the appellee claiming that the appellee breached his fiduciary duties to SCI's shareholders; and (3) the appellants against the appellee claiming that he conspired to commit fraud. *Id.* at 3 n.4.

It appears that Saxby's Worldwide eventually had its own financial issues and by August 2009, it had filed for bankruptcy under Chapter 11 of the Bankruptcy Code. *Id.* at 1 n.1 (referencing two reported decisions, *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369 (Bankr. E.D. Pa. 2009) and *In re Saxby's Coffee Worldwide, LLC*, 436 B.R. 331 (Bankr. E.D. Pa.

4

2010)).[2]  Additionally, it appears that the aforementioned action the appellants filed in Illinois remained pending as of 2012.

On February 6, 2012, the appellee filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  *See In re Nicholas A. Bayer*, No. 12-11083-elf, Doc. No. 1; *see also* Dec. 2014 Op. at 2.  The petition was assigned to the Honorable Eric L. Frank.

On April 3, 2012, Michael P. Gigliotti, Esquire ("Gigliotti") entered an appearance on behalf of the appellants in the Chapter 7 proceeding.  *See In re Nicholas A. Bayer*, No. 12-11083-elf, Doc. No. 30.  With Gigliotti as their counsel of record, the appellants then filed an adversary proceeding against the appellee on May 10, 2012.  *See* Complaint, *John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 1; Dec. 2014 Op. at 2-3; March 23, 2015 Op. ("Mar. 2015 Op.") at 2, *John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 89.

In this adversary proceeding, the appellants sought a court determination that the claims they raised in their pre-petition Illinois action were nondischargeable.  Dec. 2014 Op. at 2-3. The appellants filed an amended complaint on July 12, 2012.[3]  Amended Compl., *John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 15; *see* Dec. 2014 Op. at 3.  In the amended complaint, the appellants indicated that they opposed the discharge of their debt under 11 U.S.C. §§ 523(a)(2) and (a)(4).  *See* Dec. 2014 Op. at 3.

---

[2] The court has referenced the date of the bankruptcy as noted in *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 371 (Bankr. E.D. Pa. 2009).

[3] According to the docket entries attached to the certified bankruptcy court record, it appears that the appellee filed a motion to dismiss the adversary proceeding on June 11, 2012.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 7.  The bankruptcy court entered an order on June 27, 2012, in which the court appears to have dismissed the complaint without prejudice and provided the appellants with leave to file an amended complaint.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 10.

The appellee was granted a bankruptcy discharge on November 28, 2012.[4]  *See id.* at 3 n.3; *see* also Order Discharging Debtor, *In re Nicholas A. Bayer*, No. 12-11083-elf, Doc. No. 43. The discharge remained subject to the ultimate determination in the adversary proceeding as to whether the appellants' claims were excepted from the discharge.  *See* Dec. 2014 Op. at 3 n.3.

On January 27, 2014, the bankruptcy court granted a motion filed by Robert D. Sweeney, Esquire ("Sweeney") to appear *pro hac vice* on the appellants' behalf.[5]  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 49, 56; Mar. 2015 Op. at 2 (citations omitted).  The bankruptcy court held a non-jury trial in the adversary proceeding on December 12, 2013.  Mar. 2015 Op. at 2 (citations omitted).  Sweeney acted as lead counsel for the appellants during the trial.[6]  *Id.*

---

[4] The Chapter 7 trustee concluded that this was a no-asset case.  Dec. 2014 Op. at 2.

[5] According to the docket entries, in the months leading up to the filing of the motion, Gigliotti apparently had filed a motion to withdraw as the appellants' counsel, only to later withdraw the motion.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 36, 42.

[6] According to the bankruptcy court, "[o]nce Sweeney entered his appearance, Gigliotti played only a limited role in the [appellants'] representation, as local counsel and second chair at trial."  Mar. 2015 Op. at 2-3.  The bankruptcy court noted that prior to Sweeney entering his appearance, Gigliotti had (1) drafted the initial complaint and the amended complaint, (2) presumably drafted some part of the parties' joint pretrial statement, and (3) participated in several pretrial telephone conferences.  *Id.* at 3 n.2.  Nonetheless, the court also indicated that even though Gigliotti operated as the appellants' sole counsel prior to Sweeney's entry of appearance, "too much should not be made of [his prior] activities."  *Id.* at 3 n.2.  In this regard, the bankruptcy court noted as follows:

> The pleadings were very short; they incorporated by reference and relied almost exclusively on a state court complaint, **authored by Sweeney** (the attorney who later entered his appearance and tried the case).  The pre-trial conferences were not substantive in nature; they involved only procedural and scheduling issues.  Neither side appeared to conduct any discovery, which is not surprising because the issues in this adversary proceeding have been the subject of other judicial proceedings, probably making it unnecessary for either party to seek discovery.  As a result, from my observation of the pre-trial activity, I infer that Gigliotti did very little substantive work in this case before Sweeney entered his appearance and that the [appellants] never intended that Gigliotti would be lead counsel at trial.  I also base these inferences on the fact that, initially, the parties were aware that I intended to consolidate this adversary proceeding for trial with a similar adversary proceeding filed by another creditor, Marshall J. Katz.  Given Katz's prominent role in various litigation among the parties that has occurred in the bankruptcy court in this district, I strongly suspect that [the appellants] expected Katz and his counsel to take the laboring oar at the trial of this adversary proceeding.  However, Katz settled his claim before trial.  This left [the appellants'] claims to be tried on their own.  Against this backdrop, they brought Sweeney in to try the case.

*Id.*

The parties submitted their post-trial submissions in April and May 2014, and the bankruptcy court entered a decision in favor of the appellee and against the appellants on December 2, 2014.[7]  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 70, 71, 72; Mar. 2015 Op. at 3.  At some point in between the post-trial submissions and the bankruptcy court's decision in December, Gigliotti and G. Bayer exchanged the following text messages:

> Gigliotti:     I mean c'mon
> I'll be shocked if he rules against you in Nick's case.  If he does, I def suggest we take an appeal
>
> G.[]Bayer:    We would certainly do that.

Mar. 2015 Op. at 3, n.3.[8]

In addition to entering the bankruptcy court's decision on the docket on or about December 3, 2014, the bankruptcy clerk of court e-mailed the decision to Gigliotti upon its entry and sent it by first class mail to Sweeney on December 5, 2014.  *Id.* at 4 (citations omitted).  At 8:57 a.m. on December 4, 2014, Gigliotti forwarded a copy of the judgment and accompanying opinion to Larson by e-mail and United States mail.  *Id.* (citing Notes of Testimony, Jan. 30, 2015 ("N.T.") at 26 & Ex. C); *see also* N.T. at 18-19, 27.  At 6:24 p.m. that same day, Larson responded to Gigliotti's e-mail by stating, "While Bob [Sweeney] is going over the opinion for the next few days, can you please locate the best appellate attorney or firm.  I will be very

---

[7] The bankruptcy court's decision indicates that the clerk of court entered the opinion and judgment on the docket on December 5, 2014, but according to the docket entries, the bankruptcy clerk of court entered it on December 2, 2015, and then modified the entry on December 3, 2014.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 72, 73.  For purposes of calculating the deadlines in this case, the bankruptcy court used December 3, 2014 (and not December 5, 2014), as the starting date for the time to file an appeal.  *See* Mar. 2015 Op. at 8.  No party has raised an issue with this calculation, even though the court notes that in the appellants' brief in support of their motion, they asserted that they had filed the motion on the 21st day after the appeal deadline.  *See* Plaintiffs' Mem. of Law in Supp. of Mot. for Extension of Time to File Notice of Appeal Pursuant to B.R. 8002 as a Result of Prior Counsel's Neglect at 6 ("The twenty-one day delay in this case between the expiration of the appeal deadline and the filing of the instant motion is negligible.").

[8] The bankruptcy court noted that this text message exchange was undated and there was no evidence in the record as to when it took place.  Mar. 2015 Op. at 3 n.3.

thankful." *Id.* (citing N.T. at Ex. C); *see* N.T. at 19, 20-21.  Gigliotti did not understand Larson's e-mail as instructing him that he needed to file a notice of appeal; instead, he interpreted it as a request from Larson for a referral to another attorney to handle the appeal.  *Id.* at 4 (citing N.T. at 28, 31-32).

Based on Larson's e-mail, Gigliotti assumed that the appellants' would decide about filing an appeal after consulting with Sweeney and, if they decided to appeal, "Sweeney would 'reach out' to him for any assistance that he might need." *Id.* at 4-5 (citing N.T. at 36).  After receiving Larson's e-mail, Gigliotti did not discuss with Sweeney about filing an appeal on the appellants' behalf.  *Id.* at 5 (citing N.T. at 35).  Gigliotti also never responded to Larson after receiving the e-mail, and Larson did not attempt to reach Gigliotti thereafter.[9]  *Id.* (citing N.T. at 17, 19-20).  Larson contacted G. Bayer and it was Larson's understanding that G. Bayer "was 'trying to get a hold of' Gigliotti.'"[10]  *Id.* at 5-6 (citing N.T. at 21).  Larson also spoke to Sweeney, "but the record does not reveal the content of the conversation(s)." *Id.* at 6 (citing N.T. at 20).

Gigliotti had also provided G. Bayer with notice of the bankruptcy court's decision in the morning of December 4, 2014.  *Id.* at 6 (citing N.T. at 10, 12-13).  On that same date, G. Bayer contacted Sweeney and requested that he file an appeal.  *Id.* (citing N.T. at 11-13).  Sweeney did

---

[9] The bankruptcy court noted that Gigliotti testified that he had understood "his obligation to the [appellants] 'was finished on sending them a copy of the opinion when the case was over' insofar as "the [appellants] provided for the payment of a 'flat fee' arrangement in return for representation solely as local counsel and that it did not encompass representation in an appeal unless a separate retainer agreement was made." Mar. 2015 Op. at 5 n.5.  The bankruptcy court indicated that it found this testimony "[s]omewhat inconsistent" with Gigliotti's testimony about acting in a "subservient" position to Sweeney in the representation.  *Id.*  Nonetheless, the bankruptcy court "credit[ed]" and found "reasonable" Gigliotti's testimony that Sweeney would initiate his involvement, if any, in filing an appeal.  *Id.*  The court further commented:  "Had Sweeney instructed Gigliotti to file an appeal, would Gigliotti have declined to do so in the absence of a new retainer agreement (and presumably, a new retainer fee)?  It is hard to say, in light of his testimony.  However, the question is academic; Sweeney gave Gigliotti no such instruction."  *Id.*
[10] The bankruptcy court noted that the record did not show when this conversation occurred or the "precise content" of the conversation.  Mar. 2015 Op. at 5.

not file a notice of appeal on behalf of the appellants; instead, he advised G. Bayer to contact Gigliotti regarding the appeal.  *Id.* (citing N.T. at 11).

At some point between December 4, 2014, and December 6, 2014, G. Bayer sent Gigliotti the following text message:  "'We need to file appeal.  What is the date?'"[11]  *Id.* at 6-7 (quoting N.T. at Ex. B).  G. Bayer texted Gigliotti the message:  "'Please call me[.] How much time do we have?'" on December 6, 2014, and the message:  "'Call me or text[.] Need to know About [sic] case'" on December 8, 2014.  *Id.* at 7 (quoting N.T. at Ex. B (alterations in original)).  Gigliotti did not respond to G. Bayer's messages, and G. Bayer never attempted to contact Gigliotti again after his text message on December 8th.  *Id.* (citing N.T. at 9).[12]

At no time did Gigliotti advise either of the appellants of the deadline for filing an appeal.  *Id.* at 7 (citing N.T. at 10).  Gigliotti's only verbal discussions with either of the appellants regarding the filing of an appeal occurred in the summer of 2014, prior to the bankruptcy court's issuance of the December 2014 judgment.  *Id.* (citing N.T. at 30).  "That discussion involved 'their right to appeal,' but 'not specifically [Gigliotti] doing it [or] what the fee arrangement would be."  *Id.* (citing N.T. at 31) (alterations in original).

At some point prior to January 6, 2015, G. Bayer "'reached out'" and contacted Todd M. Mosser, Esquire ("Mosser"), to represent the appellants.  *Id.* at 7 (citing N.T. at 23).  Mosser entered his appearance on the appellants' behalf and timely filing a motion for an extension of

---

[11] The bankruptcy court pointed out that this text is undated.  Mar. 2015 Op. at 7 n.10.  The bankruptcy court "infer[red]" that G. Bayer sent it after speaking with Sweeney, but before the December 6, 2014 text referenced in Finding of Fact No. 21."  *Id.*

[12] The bankruptcy court noted that Gigliotti denied receiving the text messages from G. Bayer.  Mar. 2015 Op. at 7 n.11.  Although the appellants had asked the bankruptcy court to find this testimony incredible, the bankruptcy court found it "unnecessary to make any findings on this issue."  *Id.*  The bankruptcy court "suspect[ed] that relatively objective evidence was available (from the communications services providers) that may well have resolved this fact issue.  But no such evidence was offered by the parties."  *Id.*  Nonetheless, the bankruptcy court did not resolve the issue because the court found that (1) if Gigliotti received the texts and then declined to act, it showed that he deliberately chose not to act instead of acting negligently, and (2) if Gigliotti had not received the texts, it could have been the result of a "technological failure" that may have supported a finding of excusable neglect were it not for the appellants' lack of diligence in pursuing their appellate rights.  *Id.*

time to file a notice of appeal pursuant to United States Bankruptcy Rule 8002 as a result of prior counsel's neglect on January 6, 2015.  *Id.* at 4; *see John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 76, 77.[13]  The appellee filed a response in opposition to the motion on January 15, 2015.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 80.  The bankruptcy court held an evidentiary hearing on the motion on January 30, 2015.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 82, 87.  During the hearing, Larson and G. Bayer testified via telephone, and Gigliotti provided in-court testimony.  *See* N.T., *John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 87.

At the conclusion of the evidentiary hearing, the bankruptcy court allowed the parties to supply the court with written submissions in support of their positions.  *See* N.T. at 41-42.  The appellants filed their supporting memorandum of law on February 13, 2015, and the appellee filed his supporting memorandum of law on February 27, 2015.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 85, 86. The bankruptcy court denied the motion seeking an extension of time via a written opinion and order entered on March 23, 2015.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. Nos. 89-91.

The appellants timely filed a notice of appeal from the bankruptcy court's order denying their request for an extension of time to file an appeal on April 1, 2015.  *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 99.

---

[13] The sole basis for relief asserted in this motion was "[p]rior to [the bankruptcy court's December 2014 ruling], and immediately thereafter, [the appellants] instructed their prior counsel, [Gigliotti], to file a notice of appeal. . . . Prior counsel failed to do so."  Plaintiffs' Mot. for Extension of Time to File Notice of Appeal Pursuant to B.R. 8002 as a Result of Prior Counsel's Neglect at 3, *John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 77.

The appellants filed their designation of the contents for inclusion in the record on appeal on April 22, 2015. *See John Larson and Greg Bayer on Behalf of Saxby's Coffee Inc. v. Nicholas A. Bayer*, No. 12-379-elf, Doc. No. 104.

This court's clerk of court received the original bankruptcy record with the designation of the record on appeal on May 13, 2015, and set forth a briefing schedule on that date. The appellants timely filed a brief in support of their appeal on May 28, 2015, and the appellee timely filed a brief in support of his opposition to the appeal on June 12, 2015. The court heard oral argument on the appeal on July 1, 2015.

## II.     DISCUSSION

### A.     <u>Standard of Review</u>

On appeal from a final order entered by a bankruptcy court, the district court reviews the order using the traditional standards of review:  With regard to the bankruptcy court's legal conclusions, the district court reviews those conclusions *de novo*.  *In re Trans World Airlines*, 145 F.3d 124, 131 (3d Cir. 1998) (citation omitted).  The court reviews the bankruptcy court's findings of fact to examine whether they are "clearly erroneous."  *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999) (citing *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 635 (3d Cir. 1998)).  A finding of fact is "clearly erroneous" if "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).  Also, when applying the clearly erroneous standard . . . "[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational

relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations and internal quotation marks omitted). Thus, "[t]he fact that a reviewing court would have decided the matter differently does not render a finding of fact clearly erroneous." *First Western SBLC, Inc. v. Mac-Tav, Inc.*, 231 B.R. 878, 881 (D.N.J. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)). Moreover, "'[t]he question of excusable neglect [under Rule 8002(d)(1)] is by its very nature left to the discretion of the bankruptcy court whose decision should not be set aside unless the reviewing court ... has a definite and firm conviction that the court below committed a clear error of judgment.'" *In re Kaplan*, 482 F. App'x 704, 707 (3d Cir. 2012) (quoting *In re Lang*, 414 F.3d 1191, 1194 (10th Cir. 2005)).

## B.   Analysis

28 U.S.C. § 158 governs the jurisdiction of district courts to hear appeals from orders of United States Bankruptcy Courts. *See* 28 U.S.C. § 158(a) (setting forth district courts' appellate authority over certain orders and judgments of bankruptcy courts). Appeals from such orders and judgments "shall be taken . . . in the time provided by Rule 8002 of the Bankruptcy Rules." *See* 28 U.S.C. § 158(c)(2). Rule 8002(a) of the Federal Rules of Bankruptcy Procedure requires that "[t]he notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from."[14] *See* Fed. R. Bankr. P. 8002(a). The bankruptcy court may extend the time for a party to file a notice of appeal "upon a party's motion that is filed: **(A)** within the time prescribed by this rule; or **(B)** within 21 days after that time, if the

---

[14] An appellant's failure to timely file a notice of appeal from the complained-of decision of the bankruptcy court implicates the district court's subject-matter jurisdiction over the appeal. *See In re Caterbone*, 640 F.3d 108, 111-13 (3d Cir. 2011) (determining that "28 U.S.C. § 158(c)(2)'s incorporation of the filing timeline in Rule 8002(a)" signifies that "the time requirement for filing a bankruptcy appeal is jurisdictional" and concluding that the district court lacked jurisdiction to hear the appellant's appeal from the bankruptcy court's order dismissing his Chapter 11 bankruptcy petition because he failed to timely file the notice of appeal).

Case 2:15-cv-01789-EGS    Document 9    Filed 09/29/16    Page 13 of 31

party shows excusable neglect." Fed. R. Bankr. P. 8002(d)(1).[15] If the bankruptcy court grants an extension, it may not "exceed 21 days after the time prescribed by [Rule 8002], or 14 days after the order granting the motion to extend time is entered, whichever is later." Fed. R. Bankr. P. 8002(d)(3).

As correctly indicated by the bankruptcy court, the appellants timely filed the motion seeking an extension of time to file an appeal insofar as it was filed on January 6, 2015, which was within 35 days – a 14-day period to file an appeal as stated in Rule 8002(a)(1) and an additional 21 days after the expiration of that period as stated in Rule 8002(d)(1)(B) – of the date the bankruptcy court's decision was entered on the docket on December 3, 2014.[16] Nonetheless, because the appellants filed the motion seeking an extension in the 21-day period following the time to file an appeal, the bankruptcy court could not have granted their motion unless they showed "excusable neglect" for failing to file a timely notice of appeal. *See* Fed. R. Bankr. P. 8002(d)(1)(B).

Neither the Federal Rules of Bankruptcy Procedure nor the Bankruptcy Code define the phrase "excusable neglect" as it is used in Rule 8002(d)(1)(B). In addition, neither the Supreme Court nor any federal court of appeals has defined the phrase as it is used in this Rule. Nonetheless, the Third Circuit and other federal courts of appeals have determined (albeit some of those decisions are nonprecedential opinions) that with respect to motions under former Bankruptcy Rule 8002(c), the Supreme Court's decision in *Pioneer Investment Services Co. v.*

---

[15] Rule 8002(d)(2) provides circumstances in which the bankruptcy court may not extend the time to file a notice of appeal, but none of those circumstances are applicable here. *See* Fed. R. Bankr. P. 8002(d)(2) (listing circumstances).

[16] As stated earlier in this opinion, the bankruptcy court calculated the 35-day period from December 3, 2015. Mar. 2015 Op. at 8-9. Even if the bankruptcy court clerk of court had entered the opinion and judgment on December 2, 2015, the appellants still timely filed the motion on the 35th day of the period (instead of on the 34th day as calculated by the bankruptcy court).

*Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) applies.[17]  *See In re Kaplan*, 482 F. App'x 704 (3d Cir. 2012) ("In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court set forth the standard for evaluating claims of excusable neglect, and that standard applies in the context of a motion under Rule 8002(c)."); *Shareholders*, 109 F.3d at 879 (referencing *Pioneer* and analyzing factors in context of Rule 8002(c) motion for extension to file notice of appeal); *see also In re United Airlines, Inc.*, 355 F. App'x 57 (7th Cir. 2009) (applying *Pioneer* in analysis of bankruptcy court's denial of Rule 8002(c) motion); *Duncan v. Washington*, 25 F.3d 1047 (6th Cir. 1994) (per curiam) (stating that "[a]lthough the decision in *Pioneer* involved Bankruptcy Rule 9006, the Court's reasoning applies to other rules creating an 'excusable neglect' exception to time limits").

In *Pioneer*, the Court addressed "whether an attorney's inadvertent failure to file a proof of claim within the deadline set by the court can constitute 'excusable neglect' within the meaning of [Rule 9006(b)(1)]."  507 U.S. at 382-83.  The Court rejected the petitioner's narrow interpretation of "excusable neglect," namely that a movant must show that the "failure to comply with the court's deadline was caused by circumstances beyond its reasonable control," and pointed out that "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1) governs late filings caused by inadvertence,

---

[17] Former Bankruptcy Rule 8002(c) was the predecessor to current Rule 8002(d)(1) and provided as follows:

> The bankruptcy judge may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule.  A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect.

*See Shareholders v. Sound Radio, Inc.*, 109 F.3d 873, 879 (3d Cir. 1997) (quoting former Rule 8002(c)).  As part of the 2014 Bankruptcy Rule amendments, Rule 8002(c) was amended and renumbered as Rule 8002(d).  *See In re Dorsey*, Case No. 15-38, 2015 WL 3653310, at *1 n.1 (D.D.C. Bankr. June 11, 2015) (discussing amendment).

14

mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388.  With regard to analyzing a claim of excusable neglect, the Court explained as follows:

> [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395 (internal footnote omitted).  The Court also noted that "[clients must] be held accountable for the acts and omissions of their chosen counsel.  Consequently, . . . the proper focus is upon whether the neglect of [the clients] *and their counsel* was excusable." *Id.* at 397 (emphasis in original).

After *Pioneer*, district courts analyzing a movant's claim of excusable neglect must "consider[] and balance[]" all of the *Pioneer* factors; "no one factor trumps the others."[18] *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005).  In addition, the party moving for the extension of time to file a notice of appeal has the burden of proving excusable neglect. *See*

---

[18] The court notes that in *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315 (3d Cir. 2012), the Third Circuit addressed the issue of excusable neglect in the context of a motion under Rule 4(a)(5) of the Federal Rules of Appellate Procedure.  *Id.* at 317.  The court indicated that the factors previously established in *Consolidated Freightways Corp. of Delaware v. Larson*, 827 F.2d 916 (3d Cir. 1987), which the court decided prior to the Supreme Court's decision in *Pioneer*, was "subsumed in the more general consideration of 'reason for the delay.'" *Id.* at 327.  The Third Circuit indicated that "the factors identified in *Consolidated* should still be considered in applying the overall approach subsequently set forth by the Supreme Court in *Pioneer*.  *Id.* at 326.  More specifically, the Third Circuit directed that courts should "apply the factors from *Consolidated* in elucidating the 'reason for delay' factor from *Pioneer*." *In re Straub*, No. CIV A. 14-6607, 2015 WL 1279510 at *2 (E.D. Pa. Mar. 19, 2015).  The *Consolidated* factors are as follows:

> (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure, *Campbell v. Bowlin*, 724 F.2d 484 (5th Cir. 1984) (failure to read rules of procedure not excusable); (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, *Airline Pilots v. Executive Airlines, Inc.*, 569 F.2d 1174 (1st Cir. 1978) (mistake in diarying counsel's calendar not excusable); (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence, *United States v. Commonwealth of Virginia*, 508 F. Supp. 187 (E.D. Va. 1981) (failure to arrange coverage during attorney's vacation which encompassed end of appeal period not excusable); (4) whether the inadvertence reflects a complete lack of diligence, *Reinsurance Co. of America, Inc. v. Administratia*, 808 F.2d 1249 (7th Cir. 1987); or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Consolidated Freightways Corp.*, 827 F.2d at 919.

*In re Douglas*, 477 B.R. 274, 276 (D.D.C. 2012) (stating that "[t]he burden is on the moving party to allege facts establishing excusable neglect" under former Rule 8002(c)(2)); *In re Spiegel, Inc.*, 385 B.R. 35, 39 (S.D.N.Y. 2008) ("[I]n bankruptcy cases, whether or not there is a claim that notice of the entry of judgment was not received, the party seeking the extension of time in which to file a notice of appeal has the burden of establishing excusable neglect." (citation and internal quotation marks omitted)); *see also Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000) ("The burden of proving excusable neglect lies with the late-claimant.").

Neither party in this case raises an issue with the bankruptcy court applying the *Pioneer* factors when the court analyzed whether the appellants established excusable neglect.[19]   *See* Appellants' Br. at 9-10 (discussing *Pioneer* as standard for analyzing claim of excusable neglect), Doc. No. 4; Brief of Appellee Nicholas Bayer at 6-8 (discussing with approval the

---

[19] Although the court is compelled to follow the directive by the Third Circuit (albeit in unpublished decisions) that *Pioneer* applies to the excusable neglect analysis under Rule 8002, there are some persuasive reasons why a more restrictive application applies in Chapter 7 cases such as this one and in instances dealing with the deadline to file appeals under Rule 8002. With regard to Chapter 7 cases, the *Pioneer* Court, in providing the guidance on analyzing claims of excusable neglect under Rule 9006(b)(1) pointed out that the Rule

> governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 11 cases. The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. In overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization. This context suggests that Rule 9006's allowance for late filings due to "excusable neglect" entails a correspondingly equitable inquiry.

507 U.S. at 389 (internal footnote and citations omitted). Thus, the Court indicated that the bankruptcy courts' "broad equitable powers" are particularly important in Chapter 11 cases, whereas the court noted that Chapter 7 cases had the goal of "prompt closure and distribution of the debtor's estate." *Id.* As such, the court finds that a litigant could persuasively argue that Chapter 7 cases require a narrower analysis of the *Pioneer* factors.

As for appeals under Rule 8002, the timing requirement for filing notices of appeal is jurisdictional. *In re Caterbone*, 640 F.3d 108, 111-13 (3d Cir. 2011). At least one court has indicated that a less flexible approach to *Pioneer* is necessary in cases dealing with motions for extension of time under Rule 8002. *See In re Malone*, C/A No. 10-2470-HB, 2011 WL 4542692, at *3 ("There is no good reason not to apply the *Pioneer* rationale to the 'excusable neglect' requirement of Rule 8002(c). However, given the policy favoring finality of bankruptcy orders, acceleration of appeals, and the like, which underlies the time periods and requirements of Rule 8002, the equitable standard adopted by *Pioneer* should, in this context, be rigorously applied so that excusable neglect is only infrequently found." (quoting 10 *Collier on Bankruptcy* ¶ 8002.10[2] (Alan N. Resnick & Henry J. Sommer Eds., 16th ed. rev. 2011) (emphasis omitted)).

bankruptcy court's references to *Pioneer* and the applicable standard), Doc. No. 5.  In addition, it does not appear that the appellants claim that the bankruptcy court's factual findings contained on pages two through seven of the opinion were clearly erroneous.  Moreover, the appellants do not dispute the bankruptcy court's analysis with respect to three of the four *Pioneer* factors (especially because the court's analysis of those factors favored them); rather, they focus on the bankruptcy court's analysis of the third factor, *i.e.* the reason for the delay.  *See* Appellants' Br. at 8 ("In performing its analysis of 'excusable neglect' under B.R. 8002, the bankruptcy court erred in assessing the third factor under *Pioneer* . . . .  Specifically, the court wrongly decided that the 'reason for the delay' was attributable to inexcusable reasons.").  Accordingly, this court will focus solely on the bankruptcy court's resolution of the third factor.[20]

Before proceeding with a review of this issue, the court preliminarily notes that in their appellate brief, the appellants argue that both Sweeney and Gigliotti abandoned them and this abandonment by both counsel was their "reason for the delay."  *See* Appellants' Br. at 12.  At no

---

[20] Even if the court were to review the bankruptcy court's analysis of the other three factors, the court would have reached the same conclusions as the bankruptcy court.  With regard to the first factor, the danger of prejudice to the non-moving party, the bankruptcy court concluded that this factor weighed in favor of the appellants because there was no evidence in the record that the appellee would be materially prejudiced by the bankruptcy court allowing the belated appeal.  Mar. 2015 Op. at 12.  Instead, "the most significant consequence would be his loss of 'the windfall benefit of an opponent's missed deadline.'"  *Id.* (citing *Pincay v. Andrews*, 351 F.3d 947, 954 (9th Cir. 2003) and *Kohl's Dep't Stores, Inc. v. Levco-Route 46 Assocs., L.P.*, 121 F. App'x 971, 975 (3d Cir. 2005)).  The court also noted that the appellee would experience some prejudice insofar as there would be a delay in his "fresh start" due to the Chapter 7 discharge.  *Id.*  Nonetheless, the court pointed out that the adversary proceeding had been pending for a number of years after the appellee's discharge, the appellee did not object to settlement discussions in a related bankruptcy matter even though they delayed the case, and he did not offer any evidence that he somehow relied on the expiration of the appeal deadline.  *Id.* at 13.

As for the second factor, the length of delay and its potential impact on judicial proceedings, the bankruptcy court properly concluded that this factor weighed in favor of the appellants and explained that any delay was insignificant "and there is nothing in the record to suggest that permitting the appeal to proceed will disrupt any ongoing legal proceedings."  *Id.* at 13.  The bankruptcy court also noted that "this adversary proceeding appears to be the last 'moving part' in [the appellee's] bankruptcy case."  *Id.*

Concerning the fourth factor, the bankruptcy court determined that the record demonstrated that the appellants were acting in good faith.  *Id.*  The facts of record support this conclusion insofar as the parties have litigated the case through Saxby Worldwide's Chapter 11 bankruptcy case, the three bankruptcy cases by Saxby Worldwide's principals, and even the Illinois action.  *Id.*  Also, the bankruptcy court concluded that the appellants' grounds for appeal were not frivolous because there was legal support for the appellants' position that the appellee was acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).  *Id.* at 13-14.

point in either their motion seeking an extension or in their brief in support of their motion did the appellants argue that Sweeney's conduct somehow constituted excusable neglect.  *See* Plaintiffs' Mot. for Extension of Time to File Notice of Appeal Pursuant to B.R. 8002 as a Result of Prior Counsel's Neglect at 3; Plaintiffs' Mem. of Law in Supp. of Mot. for Extension of Time to File Notice of Appeal Pursuant to B.R. 8002 as a Result of Prior Counsel's Neglect at 2-9. Nonetheless, the bankruptcy court addressed the limited evidence with respect to Sweeney's conduct and appears to have considered it as part of the court's analysis.  Thus, while ordinarily a district court could not consider an argument on appeal that a party failed to raise with the bankruptcy court, *see In re Kaiser Grp., Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) (describing "the general rule that when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal"), the court has considered the appellants' arguments with respect to Sweeney because the bankruptcy court considered them.

As for the bankruptcy court's analysis of the third *Pioneer* factor, the bankruptcy court noted that this was an atypical case insofar as the appellants were not asserting a claim of excusable neglect due to "some inadvertent error."  Mar. 2015 Op. at 14.  Instead, they were primarily arguing that they were diligent in pursuing an appeal, but Gigliotti (and Sweeney) essentially abandoned them.  *Id.*

The bankruptcy court explained that the first part of the excusable neglect inquiry is to determine whether the failure to file a timely notice of appeal was the result of "neglect."  *Id.* at 15.  The bankruptcy court determined that the record did not demonstrate that the appellants missed the deadline for filing a notice of appeal due to neglect.  *Id.*  Instead, the record demonstrated that although G. Bayer contacted Sweeney about filing an appeal, and Sweeney told G. Bayer that he needed to contact Gigliotti about filing an appeal, Gigliotti (as local counsel

18

subservient to Sweeney) was to await Sweeney's instruction that he should file an appeal.  *Id.*  Gigliotti never received such an instruction from Sweeney and the record contained no evidence as to why this never occurred.  *Id.*  The bankruptcy court determined that the appellants also did not place any evidence in the record as to why they (1) did not turn back to Sweeney once Gigliotti failed to respond to them, and (2) why they failed to take any action after G. Bayer's final text message to Gigliotti on December 8, 2014, which was nine days before the appeal deadline.  *Id.* at 15, 16.

The bankruptcy court also focused on the lack of evidence presented about Sweeney's representation of the appellants after the court entered judgment on December 3rd.  *Id.* at 16-17.  In this regard, the bankruptcy court pointed out a number of questions that the appellants left unanswered, including:  "Did Larson ever speak to Sweeney after he sent Gigliotti the December 4, 2014 e-mail?  Did Sweeney and [the appellants] jointly decide that an appeal was appropriate?  Did Sweeney do anything at all during the appeal period?  Why didn't [Sweeney] contact Gigliotti?"  *Id.* at 17.  The bankruptcy court found the appellants' "silence" on these issues to be "deafening," and explained that "[g]iven Gigliotti's subservient position in the representation and Sweeney's role as lead counsel, information regarding all of these questions is essential to an equitable evaluation of the circumstances that led to the missed appeal deadline."  *Id.*

Based on the aforementioned evidence (and the lack of other evidence), the bankruptcy court stated that "there is no basis to conclude that the absence of a communication from Sweeney to Gigliotti was due to some kind of mix-up or inadvertence that might be excusable."  *Id.* at 15-16.  The bankruptcy court commented that "[i]n the absence of any information regarding what occurred after December 8, 2014, the only certainty is that Gigliotti did not file

the notice of appeal as a result of a deliberate choice." *Id.* at 16.  Thus, the bankruptcy court concluded that

> [w]ithout knowing more about what actions the [appellants] took and what actions Sweeney took (or did not take), the [appellants] simply have not satisfied their burden of proof on the issue of excusable neglect.  The fact that Gigliotti may (or may not have) fallen short in fulfilling his duties as counsel to the [appellants], does not shore up this cavernous gap in the record.

*Id.* at 17.

The bankruptcy court then addressed the appellants' argument that the court should not penalize them for Gigliotti's malfeasance insofar as he abandoned them and failed to advise them about the 14-day appeal deadline, essentially leaving them in the dark about their appellate rights.  *Id.* at 17-18.   In rejecting this argument, the bankruptcy court again focused on the record. *Id.* at 18.

The bankruptcy court pointed out that the appellants' portrayal of themselves as "helpless, 'abandoned'" clients was misleading.  *Id.*  Instead, "[t]hey were not wholly dependent on Gigliotti, who was merely their local counsel.  Sweeney was their chief counsel and advisor and they have not demonstrated that he, too, abandoned them."  *Id.*  Thus, the bankruptcy court concluded that

> the same shortcoming in the evidentiary records (i.e., the absence of any explanation of Sweeney's actions or inaction in the relevant time period) that defeats any argument that the missed appeal deadline was the product of the excusable inadvertence of the [appellants'] **two (2)** attorneys, also precludes any findings that the [appellants] were abandoned clients who merit extraordinary dispensation from the rules of court.

*Id.*

As a final reason for denying the motion, the bankruptcy court rejected the appellants' arguments that "they were 'diligent in their efforts to secure an appeal,' . . . only to be stymied by Gigliotti." *Id.* at 21 (internal citation omitted).   Concerning Larson, the bankruptcy court

rejected the notion that Larson had asked Gigliotti to file an appeal when he sent him an e-mail message asking if Gigliotti could research the best appellate firm and indicated that Sweeney would be reviewing the bankruptcy court's opinion.  *Id.* at 17 n.16, 21.  The bankruptcy court concluded that Larson did not establish diligence because he never attempted to contact Gigliotti after that e-mail, even though he said he contacted Sweeney there was nothing in the record as to the substance or date of this conversation, and, at best, Larson was relying on G. Bayer to reach Gigliotti.  *Id.* at 21.

Regarding G. Bayer, the bankruptcy court noted that the "situation [was] a closer call" because he testified that he had sent three text messages to Gigliotti over a five-day period and those messages included (1) two inquires as to how much time they had to appeal and an indication that the appellants wanted to appeal, (2) two requests to Gigliotti to contact him, and (3) one message that seemed to show some urgency in finding out about the case.  *Id.* Nonetheless, the bankruptcy court determined that G. Bayer had not demonstrated diligence because he did not introduce any evidence as to why he did not take any action after December 8, 2015.  *Id.* at 22.

As indicated above, the appellants generally contend that the bankruptcy court erred in not finding that "[t]he 'reason for the delay' in filing a notice of appeal in this matter was attributable to Sweeney and Gigliotti's abandonment."  Appellant's Br. at 12.  The appellants assert that although Gigliotti "assumed" that they would want to appeal, he failed to advise them of the 14-day deadline for filing an appeal and ignored their requests to perfect an appeal.  *Id.* at 13.

The appellants point out that in *In re Lauro*, No. CIV A. 07-670, 2007 WL 4180683 (W.D. Pa. Nov. 20, 2007), the court found that the failure of counsel to properly advise his

21

clients about a filing deadline constituted excusable neglect.[21]   *Id.*   They believe that the facts

here are even "more egregious" than the facts in *In re Lauro*.  *Id.* at 14.  More specifically, they

assert that "[t]his is an extraordinary case where [the appellants] were left completely in the dark

about their appellate rights and were abandoned by counsel." *Id.*  They argue that the bankruptcy

court "endorsed this abandonment by finding that Giggliotti [sic] made a 'conscious decision' to

ignore [the appellants], as if somehow that 'choice' made it acceptable to leave them in the

lurch."  *Id.*   According to the appellants, the bankruptcy court should not have focused on the

conduct of the attorneys; rather, the court should have focused on whether they should be

penalized for their attorneys' failure to protect their appellate rights.  *Id.*

The appellants argue that the bankruptcy court should have found it equitable to allow

them to file an appeal in the case.  *Id.*  They assert that they were diligent in attempting to secure

an appeal, but upon receiving no response from Gigliotti, they were forced to seek and obtain

new counsel.  *Id.*

In addressing the bankruptcy court's discussion and focus on Sweeney's involvement (or

lack thereof), the appellants believe that this is a "red herring."  *Id.* at 16.  They note that the

bankruptcy court found that Sweeney had told G. Bayer that Gigliotti was responsible for filing

the appeal; yet, "the bankruptcy court . . . attempted to split too many hairs by harping on the

precise nature of Sweeney's involvement in the post judgment process."  *Id.*   Instead, they

believe that the court should have focused on what the appellants, whom were not told about the

applicable time to file an appeal, were supposed to do once (1) Sweeney told them to

communicate with Gigliotti about filing an appeal, and (2) Gigliotti ignored them.  *Id.*   The

appellants contend that "their former lawyers [getting] in the way should not be a reason to

---

[21] The appellants also argue that the bankruptcy court wrongfully distinguished *In re Lauro* from the facts of this case.  Appellants' Br. at 13.

foreclose [the appellants'] rights to seek an appeal that the bankruptcy court itself acknowledges has solid legal support." *Id.* at 17.

With respect to the appellants' arguments, this court finds that none of them warrant reversing the bankruptcy court's decision. In the first instance, the court cannot find that the appellants' reason for the delay, namely, purported abandonment by their counsel, necessitates a finding of excusable neglect. In this regard, the court must view the conduct of the appellants with respect to Gigliotti and Sweeney independently. As for Gigliotti, the court agrees with the bankruptcy court that G. Bayer's conversations with him about the possibility of filing an appeal prior to the entry of judgment by the bankruptcy court are largely immaterial to the excusable neglect analysis. Gigliotti testified that he assumed that the appellants would want to file an appeal after receiving the adverse decision by the bankruptcy court. N.T. at 31. This does not mean, however, that the appellants ever directed Gigliotti to file an appeal on their behalf after entry of judgment.

On this particular point, the bankruptcy court properly rejected Larson's testimony (and the appellants' characterization of this testimony) that his December 4, 2014 e-mail somehow was an instruction to Gigliotti to file a notice of appeal. Instead, this e-mail only does two things: (1) it informs Gigliotti that Sweeney is still involved in the case and reviewing the bankruptcy court opinion "over the next few days," and (2) it requests that Gigliotti locate (and arguably recommend) the best appellate attorney or firm to handle an appeal. The fact that the appellants even try to characterize this correspondence as a request to Gigliotti to file an appeal on their behalf is disingenuous at best.

As for G. Bayer's text messages to Gigliotti, even if Gigliotti received the first text message from him, which contained the sentence "[w]e need to file appeal," it is unclear whether

this is simply an indication of the appellants' desire to pursue an appeal or an actual directive for Gigliotti to file one on their behalf.  It is unclear because in addition to stating that the appellants needed to appeal, G. Bayer also appears to ask (although this is also vague) about the date (presumably the deadline for filing an appeal).  Moreover, if Gigliotti received this text (and it is unclear when it was sent), Gigliotti had also received Larson's e-mail, which was seeking Gigliotti's referral of suitable appellate counsel and did not contemplate Gigliotti filing an appeal.  While the court acknowledges that this is speculative, but when G. Bayer's text is read in conjunction with Larson's e-mail, G. Bayer's text could have been interpreted as simply an expression of his desire to appeal from the decision and an inquiry as to how long the appellants would have to file such an appeal.

Nonetheless, even if G. Bayer's first text message is interpreted as a directive to Gigliotti to file an appeal on behalf of the appellants, the fact is that there is no evidence in the record that Gigliotti ever told either appellant that he would in fact file the appeal.  The undisputed evidence in the record is that Gigliotti, whether ethically proper or not, never responded to G. Bayer's texts or Larson's e-mail.  Thus, this is not an instance where clients were misled into believing that their counsel was acting on their behalf only to learn belatedly that counsel failed to take appropriate action to protect their interests.   Although the bankruptcy court concluded that Gigliotti consciously chose not to file an appeal rather than fail to file an appeal due to some other circumstances (possibly beyond his control), there is no evidence in the record that he consciously chose to not file an appeal after agreeing to do so or that the appellants relied on his representation that he would file an appeal to their ultimate detriment.[22]

---

[22] The appellants' argument that somehow Gigliotti consciously decided to "ignore" them concerning their desire to file an appeal is unsupported by the record.  Gigliotti admitted that he did not respond to Larson's e-mail, but that e-mail did not involve any request that Gigliotti do anything other than help the appellants possibly find new counsel. As for G. Bayer, the bankruptcy court did not resolve the conflict between G. Bayer's testimony that he sent three

Additionally, the appellants' attempt to downplay the significance of Sweeney's role in the case after the entry of judgment is also unavailing.  As previously indicated, the appellants never mentioned Sweeney in their motion seeking an extension of time or in their supporting brief.  Nonetheless, the appellants now consistently indicate that they were "abandoned" by their counsel (without differentiating between the conduct of the two attorneys), when the evidence in the record (as found by the bankruptcy court) does not demonstrate that Sweeney ever abandoned them.  Instead, the only evidence in the record regarding Sweeney is that G. Bayer contacted him after learning of the adverse decision and Sweeney told him to contact Gigliotti about filing an appeal.  There is no other evidence in the record about the appellants' interaction with Sweeney after G. Bayer's December 4, 2014 conversation with him.  There is also no evidence in the record that Sweeney ever contacted Gigliotti about filing an appeal.  Although Larson stated that he spoke to Sweeney, there is nothing in the record as to when they spoke or the substance of their conversation.  Therefore, even though the record evidence shows that G. Bayer at least requested that Sweeney file an appeal, there is no evidence to show that the appellants communicated with him again after he told G. Bayer to contact Gigliotti about filing an appeal and G. Bayer failed to receive any responses from Gigliotti.  At bottom, there is simply no evidence showing what ultimately happened with Sweeney and there is insufficient evidence for the court to conclude that he abandoned them, even if such a showing could lead to a finding of excusable neglect here.

---

texts to Gigliotti and Gigliotti's testimony that he never received the texts because the bankruptcy court determined that it did not need to do so to resolve the appellants' motion.  Although the bankruptcy court determined that Gigliotti deliberately did not file a notice of appeal on the appellants' behalf, the court did not find that he deliberately ignored them as to any request that they made for him to file an appeal made after entry of the judgment, and there is no support for such a factual finding or legal conclusion based on the record.  Nevertheless, as explained later in this opinion, even if the evidence of record supported such a finding (and to support such a finding, the court would have to find that Gigliotti received G. Bayer's first text message) the appellants have failed to establish their own excusable neglect.

With regard to counsel's failure to advise the appellants of the time to file an appeal, Gigliotti conceded that he never advised the appellants of the 14-day period to file an appeal. G. Bayer also testified that Sweeney never told him about the dates for filing an appeal, although it is unclear if G. Bayer had asked him about the time during their December 4, 2014 conversation. N.T. at 13.  More importantly, as the bankruptcy court noted, after Gigliotti failed to respond to G. Bayer's text messages, which, again, were somewhat vague, but could be interpreted as asking about the time to file an appeal, there is no evidence in the record that the appellants ever contacted Sweeney, who was their lead counsel during the trial and with regard to their post-trial submissions to the court, to inquire about this issue.  As indicated earlier, the evidence simply does not demonstrate that Sweeney abandoned them as well.

Additionally, the bankruptcy court did not err in concluding that the appellants' cited cases, particularly, *In re Lauro*, compels a different result.  In that case, the debtors failed to file a certificate of their completion of a post-petition credit counseling course as required by 11 U.S.C. § 727(a)(11) and "Interim Federal Rule of Bankruptcy Procedure 1007(c)," within 45 days after the first date set for the meeting of creditors.  2007 WL 4180683 at *1.  Instead, they filed the certificate approximately two months late because (1) they believed, after conducting internet research, they had six months to complete the course, (2) their attorney had not advised them of the 45-day deadline, and (3) the clerk's office had sent a notice of the creditors' meeting that did not contain any reference to the 45-day period.  *Id.*  Due to the failure to timely file a certificate of completion, the bankruptcy court denied the debtors' discharge and closed the Chapter 7 case.  *Id.*

The debtors filed a motion to reopen, which the bankruptcy court denied apparently without explaining how the court addressed the issue of excusable neglect.  *Id.* at *2-6.  The

26

debtors then appealed to the district court. Instead of remanding the case to the bankruptcy court to analyze the issue of excusable neglect, the court decided to analyze the *Pioneer* factors. *Id.* at *6. With respect to the third factor, the court found that the debtors had reasonable control over the delay insofar as "if they had known about the time period they could have completed the course and timely filed the certification." *Id.* at *7. The court also analyzed whether the debtors "should be punished for their attorney's mistake in not advising them about the deadline." *Id.* The court concluded that "[t]he debtors were the clients of the counsel who admitted that it was a mistake for him not to advise the [debtors] about the forty-five-day time period." *Id.* The court found that this factor weighed in favor of the debtors. *Id.* Based on its analysis of the *Pioneer* factors, the court found "that as a matter of equity the delay in filing the certificate of completion resulted from excusable neglect." *Id.*

As explained earlier, as in all cases involving claims of excusable neglect, a court must review all of the *Pioneer* factors. The bankruptcy court correctly pointed out that *In re Lauro* was not simply a case focused on attorney malfeasance. For example, the court noted that the notice of creditors meeting provided by the bankruptcy court was modified to now include a reference to the 45-day period. *Id.* The decision evidences a district court's determination that the facts of the case warranted an equitable remedy in the nature of permitting the debtors to file a belated certificate of completion and proceed with their Chapter 7 bankruptcy.

Even if the bankruptcy court had wrongly distinguished *In re Lauro*, it would not compel a reversal of the bankruptcy court's decision because *In re Lauro* is not a precedential opinion binding on the bankruptcy court (or this court) and it would be, at most, persuasive authority. *See In re Circle 10 Restaurant, LLC*, 519 B.R. 95, 137 (D.N.J. 2014) (pointing out that "there is no such thing as the law of the district in the Third Circuit" (internal quotation marks omitted)

(quoting *Threadgill v. Armstrong World Indus., Inc.* 928 F.2d 1366, 1371 (3d Cir. 1991) and *In re Brown*, 244 B.R. 62, 64 (Bankr. D.N.J. 2000)).   Moreover, even if Gigliotti should have informed the appellants of the 14-day period, and even if this failure and his failure to respond to G. Bayer's texts (presuming he received them), would constitute abandonment of the appellants, the appellants have failed to show their own excusable neglect or that they otherwise acted diligently in pursing an appeal.   And this failure also dooms their appeal.

In this regard, the bankruptcy court correctly concluded that there is no evidence that Larson was diligent in pursuing a timely appeal.   His did not communicate with Gigliotti about the need to file an appeal and he essentially stated that he was relying on G. Bayer to move the case along.   As for G. Bayer, his communication with Gigliotti is somewhat perplexing because even though he sent three text messages over a 5-day period in which he vaguely sought information about an appeal, his testimony raises the same concerns with this court as it did with the bankruptcy court.   More specifically, upon not receiving any responses from Gigliotti, there is no evidence that he attempted to e-mail or call him.   There is also no evidence that he contacted Sweeney after Gigliotti failed to respond to him even though Sweeney was lead counsel and Larson had indicated to Gigliotti that Sweeney was in the process of reviewing the bankruptcy court's decision.   Although G. Bayer stated that Sweeney told him to contact Gigliotti about filing an appeal, there is no evidence that Sweeney informed G. Bayer that he should not contact him again or that somehow Sweeney's representation terminated after his December 4, 2014 phone conversation.   Simply put, there is no evidence as to what G. Bayer did for the 9 other days that he had to appeal.   Unlike the debtors in *In re Lauro*, there is no evidence that the appellants attempted to use the internet or any other resource to research the deadline for appealing from the bankruptcy court order.   They would have no reason not to act because as far

28

as the record is concerned, neither Sweeney nor Gigliotti had informed them that they were going to file an appeal.

Even if Gigliotti had abandoned the appellants, they have not demonstrated their own excusable neglect. *See Moje v. Federal Hockey League, LLC*, 792 F.3d 756, 758 (7th Cir. 2015) (Easterbrook, J.) ("[A] lawyer's abandonment of the client ends the agency relation. Abandonment leaves the client responsible for its own conduct, but not for the lawyer's—and then the question becomes whether the litigant's conduct constituted excusable neglect."). Once again, the appellants' conduct would not satisfy the third *Pioneer* factor, the weight of which based on the facts of this case would outweigh the other three factors. In particular, and as already stated, the appellants failed to show why they did not involve Sweeney in filing an appeal or to learn information about the filing deadline once Gigliotti "abandoned" them. Thus, even if the court characterized the appellants' conduct as neglect, the conduct is not excusable because the reason for the delay was their lack of diligence in communicating with their counsel of record, attempting alternative methods of communicating with Gigliotti when he purportedly failed to respond to G. Bayer's texts, or even attempting to conduct a modicum of research on their own as to what their rights were with respect to an appeal. They were not left helpless due to Gigliotti's failure to respond; instead, they still had Sweeney. Yet, they appear to have consciously decided to not provide the bankruptcy court with any information concerning Sweeney's representation of them outside of one conversation with G. Bayer on December 4, 2014. Although Sweeney directed G. Bayer to Gigliotti, there is no explanation as to why G. Bayer could not or did not return to Sweeney once Gigliotti did not respond to him.

Therefore, the court finds that the bankruptcy court did not err in concluding that the appellants had not acted diligently in pursuing an appeal. Additionally, the bankruptcy court did

not err in concluding that this case did not present "extraordinary" circumstances warranting relief as claimed by the appellants and that the appellants had failed to satisfy their burden to prove excusable neglect.

### III.    CONCLUSION

As the party moving for an extension of the time to file a notice of appeal, the appellants bore the burden of establishing excusable neglect under Bankruptcy Rule 8002(d).   The bankruptcy court correctly concluded that the appellants failed to satisfy this burden through the record they created in support of their motion.  In the first place, they did not show the failure to file a timely appeal was the result of counsel's neglect because this was not a case in which Gigliotti received a request to file an appeal, agreed to file the appeal, and then failed to do so.  It is unclear whether Gigliotti received such a request after the bankruptcy court entered judgment (as the bankruptcy court did not render a finding on this issue), as the only definitive evidence was that Gigliotti received a request from Larson to provide him (Larson) with the name of a leading appellate lawyer or law firm.  Even if he had received such a request from G. Bayer via the text message sent on December 4, 2014, he never acknowledged it by responding to him. Yet, other than sending two vague messages (neither of which requested that he file an appeal) and still receiving no response, Greg Bayer did not take any additional action (including contacting his other attorney, Sweeney) within the 14-day appeal period to protect his rights to appeal.  Therefore, Gigliotti's conduct in not filing an appeal was not negligent.  Additionally, the court cannot conclude that Sweeney's conduct was negligent because neither appellant contacted him again after he informed G. Bayer to talk to Gigliotti about filing an appeal.

To the extent that Gigliotti was obliged to and failed to advise the appellants of the time to appeal, or even to the extent that the court could have concluded that he abandoned the

appellants on appeal, the appellants failed to demonstrate their own excusable neglect insofar as the reason for the delay in filing the document was in their reasonable control.  The bankruptcy court correctly concluded that the appellants failed to diligently pursue a timely appeal.  The record demonstrated that Larson took one action that had nothing to do with a direction to file an appeal.  As for G. Bayer, even presuming that Gigliotti received his text messages, the record does not demonstrate diligent conduct by him in pursuing his right to an appeal.  Furthermore, the appellants utterly failed to demonstrate Sweeney's role in this process or provide any explanation as to why they did not contact him for help.  G. Bayer's testimony that Sweeney directed him to Gigliotti about filing an appeal does not contain any reference to Sweeney essentially washing his hands of the case upon his instruction to G. Bayer.  The court could not draw such an inference because according to Larson, Sweeney was still actively involved in the case and would be communicating with them about the bankruptcy court's opinion.

The appellants were obliged to create a record that would support a finding of excusable neglect.  As the bankruptcy court pointed out, they failed to create such a record.  Accordingly, the court will affirm the bankruptcy court's order.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

31